UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ALCANTARA,<br><br>                Petitioner,<br>      v.<br>L.S. McEWEN, Warden,<br><br>                Respondent. | Civil No.   12-cv-0401-IEG (DHB)<br><br>**REPORT AND RECOMMENDATION GRANTING RESPONDENT'S MOTION TO DISMISS**<br><br>**[ECF No. 12]** |

      Petitioner Jose Alcantara, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 challenging the conviction and sentence imposed by the San Diego County Superior Court in case number SC206733. (ECF No. 1 at 2.) Respondent moves to dismiss the Petition asserting it is time barred pursuant to 28 U.S.C. § 2244(d). (ECF No. 12 at 1:24-25.) Petitioner filed an opposition to the motion to dismiss on July 9, 2012. (ECF No. 18.) Pursuant to the Court's directive (*see* ECF No. 9 at 2:17-19), Respondent did not file a reply to Petitioner's opposition.

      After a thorough review of the pleadings and all supporting documents, the Court finds the Petition is statutorily barred by the expiration of the limitations period and that statutory tolling does not apply. In addition, the doctrine of equitable tolling does not save Petitioner's untimely Petition given the circumstances of this case. Accordingly, the Court **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED**.

/ / /

## I. PROCEDURAL BACKGROUND

On November 7, 2007, Petitioner pleaded guilty to five counts of lewd and lascivious conduct with a child under the age of fourteen. (Lodgment No. 1 at 1-3.) On January 8, 2008, the state trial court sentenced Petitioner to a stipulated prison term of 22 years. (*Id.*) Petitioner did not file an appeal in the California Court of Appeal or a petition for review in the California Supreme Court. (ECF No. 1 at 2-3.)

On July 13, 2011, Petitioner signed a state habeas petition that was subsequently filed on July 18, 2011 in the California Supreme Court in which he asserted a single claim that his trial counsel was ineffective. (Lodgment No. 2 at 3.) On December 14, 2011, the California Supreme Court summarily denied the petition. (Lodgment No. 3.)

On January 25, 2012, Petitioner signed the instant federal Petition under 28 U.S.C. § 2254, which was subsequently filed in the Central District of California on February 1, 2012. (ECF No. 1.) This action was transferred to the Southern District of California on February 8, 2012. (ECF No. 4.) On February 15, 2012, the Court dismissed the Petition for failure to pay the $5.00 filing fee or move to proceed *in forma pauperis*. (ECF No. 7.) The action was re-opened on February 29, 2012 after Petitioner paid the requisite filing fee. (ECF No. 8.)

The Petition raises a single ground for relief, namely, that Petitioner's trial counsel was ineffective for telling him to plead guilty when the prosecutor had insufficient evidence to find Petitioner guilty except for one count. (ECF No. 1 at 4.) Respondent filed the instant motion to dismiss on April 6, 2012. (ECF No. 12.) The Court granted Petitioner two extensions of time to file an opposition. (*See* ECF Nos. 15, 17.) Petitioner filed his opposition to the motion to dismiss on July 9, 2012. (ECF No. 18.)

## II. DISCUSSION

Respondent argues the Court should dismiss the Petition because it is time barred by the one year statute of limitations set forth in 28 U.S.C. § 2244(d). Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), as amended, "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The limitation period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

In this case, Petitioner did not directly appeal his conviction in state court. (ECF No. 1 at 2-3.) In California, when a prisoner does not appeal his conviction the judgment becomes final sixty days after entry of judgment. *See* CAL. R. CT., RULE 8.104. Thus, as Petitioner concedes (*see* ECF No. 18 at 16:5-6), the judgment became final on March 8, 2009. The statute of limitations begins to run on the day after judgment becomes final and terminates on the last day of the limitation period. *See* FED. R. CIV. P. 6(a)(1). Thus, absent a later start date or any tolling, Petitioner had one year, until March 9, 2009, to file his federal habeas petition. Petitioner constructively filed[1] the Petition on January 25, 2012, nearly three years after AEDPA's one-year statute of limitations expired. Therefore, the Petition is untimely unless Petitioner is entitled to a later limitations start date due to the "state impediment" exception, or if AEDPA's statutory tolling provision or the doctrine of equitable tolling extend the filing deadline.

**A.     "State Impediment" Exception**

  1.     Legal Standard

As noted above, generally, unless one of three statutory exceptions apply, AEDPA's statute of limitations begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). However, under one of the exceptions the limitations start date will be extended until "the date on which the impediment

---

[1] Defendant apparently concedes that Petitioner should be afforded the benefit of the "prison mailbox rule," which provides that a *pro se* prisoner's pleading is deemed filed as of the date the pleading is delivered to prison officials. (ECF No. 12-1 at n.2 (citing *Houston v. Lack*, 487 U.S. 266 (1988) (holding that *pro se* prisoners are deemed to have filed pleadings on the day they deliver them to prison staff for mailing); *Miles v. Prunty*, 187 F.3d 1104, 1106 n.2 (9th Cir. 1999) (recognizing the application of the "prison mailbox rule" to the filing of *pro se* habeas petitions).) However, even assuming that Plaintiff is entitled to the benefit of this rule, his Petition is still untimely, for the reasons discussed herein.

to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). "[D]eterminations of whether there was an 'impediment' under § 2244(d)(1)(B)" are "highly fact-dependent." *Whalem-Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (per curiam).

    2.    <u>Analysis</u>

Petitioner filed his only state habeas petition in the California Supreme Court on July 13, 2011 (Lodgment No. 2), more than two years after the expiration of AEDPA's one-year statute of limitations.[2] However, Petitioner argues that the limitations period should be tolled under 28 U.S.C. § 2244(d)(1)(B)'s "state impediment" exception. Specifically, Petitioner argues that the prison where he is housed failed to provide him with adequate translation assistance. Petitioner, who does not speak English, contends that he visited the prison law library on June 16, 2008, and that he asked the library technician, Mrs. Davidosky, for translation assistance so he could file a state and federal habeas petition. (ECF No. 18 at 6:22-28; 21:18-23.) However, Mrs. Davidosky told Petitioner that prison policy prevented her from assisting inmates in completing habeas forms and that he should instead seek help from the inmate population. (*Id.* at 7:1-4; 21:23-22:1.) Petitioner claims that he sought inmate help on a weekly basis for the next eighteen months, but that nobody would help him. (*Id.* at 7:5-7; 22:2-5.) Finally, on November 4, 2009, Petitioner obtained a new bilingual cell mate, Bismarck Ceja, who agreed to help Petitioner prepare his state and federal habeas petitions. (*Id.* at 7:7-10; 22:5-8.)[3]

Title 15, § 2405 of the California Code of Regulations states: "Employees must not assist an inmate or parolee in the preparation of any legal document, or give any form of legal advice or service, except as specifically authorized by the warden, superintendent or regional parole administrator. Employees should help inmates and parolees to find qualified assistance for their legal problems." Moreover, Mrs. Davidosky

---

[2] Defendant's motion to dismiss refers to a "second superior court petition" filed on April 1, 2010, and a California Supreme Court petition filed on September 17, 2010. (ECF No. 12-1 at 4:18-22.) However, the record before the Court, and Defendant's reference to "Estrada" (*id.* at 4:23) suggests that these references were erroneously included in the motion to dismiss.

[3] Petitioner's California Supreme Court habeas petition claims that Petitioner did not obtain a new cell mate that was willing to assist him until November 16, 2010. (ECF No. 13-2 at 7:19-20.) However, whether Petitioner obtained translation assistance in November 2009 or November 2010 does not alter the Court's conclusion that the doctrine of equitable tolling does not save Petitioner's untimely Petition. Specifically, under either scenario Petitioner had obtained translation assistance by the time he obtained his client file in April 2011.

offered to write a letter to the court explaining Petitioner's claimed disability. (Lodgment No. 2 at 84-86.) However, Petitioner declined the offer. (*Id.*)

The instant case differs from the facts in *Whalem/Hunt*, wherein the petitioner asserted that a state impediment existed due to the prison library's lack of any legal materials containing AEDPA's statute of limitations requirement. 233 F.3d at 1147. In that case, the Ninth Circuit concluded that, following further factual development at the district court, the petitioner's claim could provide a basis for the "state impediment" exception. *Id.* at 1148. Here, however, Petitioner does not claim that the necessary legal materials were not found in the law library, only that he could not understand them due to his inability to understand English. However, Petitioner's inability to understand English is not a state-created impediment. *See, e.g.*, *Torres v. Dexter*, 662 F. Supp. 2d 1156, 1160 (C.D. Cal. 2009) (concluding that petitioner's "alleged language difficulties are not created by the State" and rejecting argument that "the absence of legal materials in a prisoner's native language constitute[s] a State-created impediment.") (citations omitted).

Petitioner also relies on Title 15, § 3160(a) of the California Code of Regulations, which states, in part: "Inmate access to the courts shall not be obstructed. Staff shall assist illiterate inmates or those physically incapable of preparing forms adopted under rules of the United States courts . . . for petitions for habeas corpus . . . if such an inmate requests assistance." However, even ignoring the fact that this provision appears to conflict with § 2405's prohibition against assisting inmates in completing legal paperwork, Petitioner's reliance is misplaced. A "state impediment" under 28 U.S.C. § 2244(d)(1)(B) must be one that violates "the Constitution or laws of the United States." Whether prison officials failed to adhere to a state regulation requiring that assistance be provided to illiterate inmates is insufficient.

Thus, Petitioner's claim that Mrs. Davidosky's refusal to provide translation assistance is unpersuasive. Petitioner's inability to understand English is not an impediment created by the state such that 28 U.S.C. § 2244(d)(1)(B) applies. Thus, the Court finds that Petitioner is not entitled to a later start date of AEDPA's statute of limitations period.

///

///

///

**B.     Equitable Tolling**

      1.     <u>Legal Standard</u>

The United States Supreme Court has determined that equitable tolling is available under 28 U.S.C. § 2244(d) in appropriate cases. *See Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). In *Holland*, the Supreme Court recognized equitable tolling of AEDPA's one-year limitations period when the prisoner can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.' and prevented timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The Ninth Circuit has also held that AEDPA's one-year statute of limitations is subject to equitable tolling. *See Calderon v. United States Dist. Ct. (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled on other grounds by Calderon v. United States Dist. Ct. (Kelly)*, 163 F.3d 530, 540 (9th Cir. 1998); *Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002) ("AEDPA's statute of limitations provision is subject to equitable tolling."). However, the Ninth Circuit in *Beeler* noted that "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Beeler*, 128 F.3d at 1288 (quoting *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996)). The extraordinary circumstances must be the "but-for and proximate cause" of the untimely filing. *Allen v. Lewis*, 255 F.3d 798, 800 (9th Cir. 2001).

Equitable tolling "is unavailable in most cases." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). "[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002). The *Beeler* court noted that district judges must "take seriously Congress's desire to accelerate the federal habeas process" and "only authorize extensions when this high hurdle is surmounted." *Beeler*, 128 F.3d at 1289.

A habeas petitioner "bears the burden of showing that equitable tolling is appropriate." *Gaston v. Palmer*, 417 F.3d 1030, 1034 (9th Cir. 2005). The burden is on Petitioner to show that the "extraordinary circumstances" he has identified were the proximate cause of his untimeliness, rather than merely a lack of diligence on his part. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003); *Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003). Moreover, "when external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling may be appropriate." *Miles*, 187

F.3d at 1107.

When courts assess a habeas petitioner's argument in favor of equitable tolling, they must conduct a "highly fact-dependent" inquiry. *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000); *see also Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) ("As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules.").

Petitioner's status as a *pro se* litigant, though not by itself sufficient to warrant equitable tolling, is relevant. *See Roy v. Lampert*, 465 F.3d 964, 967, 970 (9th Cir. 2006) (in considering whether equitable tolling applies, court "consider[ed] it highly relevant that [petitioners] were proceeding *pro se* until appointed counsel by the district court. We must construe *pro se* habeas filings liberally. . . . [E]ven though *pro se* status alone is not enough to warrant equitable tolling, it informs and colors the lens through which we view the filings, and whether these filings made sufficient allegations of diligence.").

2.   <u>Analysis</u>

Here, Petitioner makes two arguments in support of his equitable tolling claim. First, Petitioner contends that his inability to obtain his client file from his underlying criminal proceedings amounts to "extraordinary circumstances." Second, Petitioner contends that the prison's refusal to provide adequate English-Spanish translation assistance to an illiterate inmate amounts to "extraordinary circumstances." As set forth below, the Court agrees with the former argument, but not the latter. However, even the equitable tolling available to Petitioner under the former argument is insufficient to render the Petition timely.

         *a.*    *Unavailability of Client File*

Petitioner argues that AEDPA's statute of limitations should be tolled during the time in which he sought to obtain his client file from his attorney in the underlying criminal proceedings. The Court agrees, although the Petition is nevertheless untimely.

"Though ordinary attorney negligence will not justify equitable tolling, [the Ninth Circuit has] acknowledged that where an attorney's misconduct is sufficiently egregious, it may constitute an 'extraordinary circumstance' warranting equitable tolling of AEDPA's statute of limitations. *Spitsyn v. Moore*, 345 F.3d 796, 800 (9th Cir. 2003) (citing *Ford v. Hubbard*, 330 F.3d 1086, 1106 (9th Cir. 2003) ("there are instances in which an attorney's failure to take necessary steps to protect his client's interests

is so egregious and atypical that the court may deem equitable tolling appropriate.")). The Ninth Circuit has further "held that equitable tolling may be appropriate when a prisoner had been denied access to his legal files." *Id.* at 801 (citing *Lott v. Mueller*, 304 F.3d 918, 924 (9th Cir. 2002)). In *Spitsyn*, the failure of an attorney who had been retained to file a habeas petition to prepare and file the petition or to return the client file to the prisoner during the limitations period despite the prisoner's request was, according to the Ninth Circuit, sufficient to justify equitable tolling, although the matter was remanded to the district court to determine whether the prisoner had exercised reasonable diligence in ultimately filing his petition. *Id.* at 801-02.

"It is 'unrealistic to expect [a habeas petitioner] to prepare and file a meaningful petition on his own within the limitations period' without access to his legal file." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027 (9th Cir. 2005) (quoting *Spitsyn*, 345 F.3d at 801). Here, the record indicates that Petitioner first requested that his trial attorney, Manuel Gonzalez, provide him with his client file on February 12, 2009, nearly one month before the statute of limitations was set to expire on March 9, 2009. (ECF No. 2 at 45.) Petitioner also sent letters to Gonzalez on April 22, 2009, and June 20, 2009, requesting that the client file be provided. (*Id.*) Petitioner's letters to Gonzalez indicated that Petitioner needed the client file because he was preparing a habeas petition. (*Id.*) However, as the California State Bar recognized, Gonzalez never responded to Petitioner's letters. (*Id.*) Such failure was found to be in willful violation of Rule 3-700(D)(1) of California's Rules of Professional Conduct which requires that an attorney promptly release all client files to a client upon termination of employment and upon the client's request. (*Id.*) Gonzalez's failure to provide Petitioner with the client file formed part of the basis for Gonzalez's December 2010 suspension. (*Id.*)

On February 14, 2011, after Petitioner's efforts to obtain the client file directly from Gonzalez had proved fruitless, and after Gonzalez had been formally disciplined by the California State Bar, Petitioner attempted to obtain his client file by filing in the state trial court a motion for appointment of counsel to investigate and, if appropriate, prepare a motion for DNA testing under California Penal Code § 1405. (*Id.* at 73-74.) The court granted Petitioner's motion on February 28, 2011, and appointed the office of the San Diego Public Defender to investigate the appropriateness of a motion for DNA testing. (*Id.* at 76-77.) On April 22, 2011, Petitioner's counsel abandoned pursuit of a motion for DNA testing after determining that

such a motion would not be appropriate because of a lack of physical evidence that could be subjected to DNA testing. (*Id.* at 79-80.) On that same date, Petitioner's counsel wrote Petitioner a letter advising him that the motion for DNA testing had been abandoned. (*Id.* at 82.) The letter was accompanied by "copies of the abandonment of the [Penal Code § 1405] motion, the original charging document, the police reports, the pre-sentence probation report, and other documents from the court file." (Lodgment No. 2 at 82.)

Here, the Court finds that, under the circumstances, Petitioner should be afforded the benefit of the doctrine of equitable tolling during the time he sought to obtain his client file from Gonzalez (beginning on February 12, 2009) until he ultimately obtained the file from his court-appointed attorney (in late-April 2011). Petitioner has demonstrated reasonable diligence during this time period. However, Petitioner has not shown that he exercised reasonable diligence in attempting to obtain the client file prior to February 12, 2009. Thus, more than eleven months (*i.e.*, from the March 8, 2008 date on which judgment became final until he first attempted to obtain his client file on February 12, 2009) of the limitations period had already expired before Petitioner attempted to obtain his client file. In addition, more than two months expired from the late-April 2011 date when he obtained the client file until the July 13, 2011 date on which filed his state habeas petition. Further, an additional forty-two days elapsed from the California Supreme Court's December 14, 2011 denial of the state habeas petition and the January 25, 2012 date that Petitioner signed his federal petition.

Accordingly, even taking into account the available equitable tolling, AEDPA's one-year statute of limitations had expired prior to Petitioner's filing of his state habeas petition.

### b. *Translation Assistance*

Petitioner argues that the prison's refusal to provide adequate translation assistance was not only a "state impediment" under 28 U.S.C. § 2244(d)(1)(B), a claim which the Court rejects as discussed above, but that it also amounts to "extraordinary circumstances" sufficient to justify equitable tolling because he was illiterate. Petitioner claims that the statute of limitations should be equitable tolled from June 18, 2008 (the day he sought assistance from Mrs. Davidosky) until he filed his federal habeas petition. (ECF No. 18 at 16:11-13.) In support of his claim, Petitioner introduced evidence that when he sought translation assistance from Mrs. Davidosky, he was illiterate and he spoke Spanish but not English. (*Id.* at 21:18-22.) When his request for assistance was denied, Petitioner sought translation assistance from the inmate

population on a weekly basis for the next year and a half, until he finally obtained a new cell mate that was willing and able to assist him. (*Id.* at 21:23-22:8.) Thus, Petitioner claims "(1) that he ha[d] been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418).

"[A] non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source." *Mendoza v. Carey*, 449 F.3d 1065, 1070 (9th Cir. 2006). Here, Petitioner has demonstrated that he was unable, despite his diligence, to obtain translation assistance. However, Petitioner makes no attempt to demonstrate that legal materials were not available in his own language. Accordingly, Petitioner has failed to make the minimum showing necessary for equitable tolling.

The Court is mindful of Petitioner's claim that he was illiterate. However, the Court is also mindful of the fact that Petitioner sent at least three letters to his trial attorney, Gonzalez, in February, April and June 2009, requesting copies of his client file. (ECF No. 2 at 45.) If Petitioner himself wrote these letters, his claim that he was illiterate fails. If someone wrote these letters on his behalf, Petitioner's claim that he was unable to obtain assistance until he received a new cell mate in November 2009 fails. Under either scenario, Petitioner has not shown why he was unable to file a timely petition. It is possible that the letters to Gonzalez were written in Spanish, and that Petitioner was never able to obtain English translation assistance. However, even if that were the case, as noted above, Petitioner has made no showing that the prison's law library did not contain Spanish legal materials. *See Hartman*, 2009 U.S. Dist. LEXIS 102523, *11 (concluding that allegations of "illiteracy, lack of education and ignorance of the law . . . are insufficient to warrant equitable tolling.").

Accordingly, the Court finds that Petitioner has failed to make the minimum showing required by *Mendoza* and that, as a result, Petitioner is not entitled to equitable tolling due to the lack of translation assistance. *See Mathis v. Uribe*, 2009 U.S. Dist. LEXIS 96804, * 13 (S.D. Cal. Sept. 3, 2009 ("Petitioner has the burden of demonstrating facts to warrant tolling.") (citing *Smith v. Duncan*, 297 F.3d 809, 814-15 (9th Cir. 2002)). Thus, Petitioner is only entitled to equitable tolling during the time that he sought his client file until he received the client file. However, as noted above, this time is insufficient to make the

Petition timely.

**C.     Statutory Tolling**

    1.     <u>Legal Standard</u>

AEDPA's one-year limitations period is tolled during the period of time a petitioner seeks post-conviction relief in state court. 28 U.S.C.A. § 2244(d)(2). Specifically, AEDPA's statutory tolling provision provides:

> The time during which a <u>properly filed</u> application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2) (emphasis added). Tolling begins "from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge" as long as the petitions are properly filed. *Evans v. Chavis*, 546 U.S. 189 (2006).

    2.     <u>Analysis</u>

Here, Petitioner is not entitled to statutory tolling during the time in which his state habeas petition was pending (*i.e.*, from July 18, 2011 to December 14, 2011) because that petition, being untimely, was not "properly filed." *See* 28 U.S.C. § 2244(d)(2); *see also Mathis v. Uribe*, 2009 U.S. Dist. LEXIS 96804, * 14 (S.D. Cal. Sept. 3, 2009) ("Documents filed after relevant deadlines have passed are not considered 'properly' filed."); *Hartman v. Smelosky*, 2009 U.S. Dist. LEXIS 102523, *11 (C.D. Cal. June 1, 2009) ("The filing of a state petition after the expiration of the statute does not revive or otherwise toll the statute.").

### III. CONCLUSION

After a through review of the record in this matter and based on the foregoing analysis, the Court **HEREBY RECOMMENDS** that Respondent's motion to dismiss be **GRANTED**.

The Court submits this Report and Recommendation to United States District Judge Irma E. Gonzalez under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d) of the United States District Court for the Southern District of California.

**IT IS HEREBY ORDERED** no later than **February 7, 2013**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within

the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: January 24, 2013

DAVID H. BARTICK
United States Magistrate Judge